## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Scott Steven Derossi,

                    Plaintiff,          Case No. 1:17-cv-03544

v.                                      Michael L. Brown
                                        United States District Judge
Georgia Board of Regents, d/b/a
The Dental College of Georgia
(DFG) at Augusta University, d/b/a
Dental Faculty Practice Group
(DFPG), and Dean Carol Lefebvre,
in her Individual and Official
Capacities,

                    Defendants.

_____/

## <u>ORDER</u>

Plaintiff Scott Steven Derossi filed this action against Defendants Georgia Board of Regents ("BOR") and Dean Carol Lefebvre, alleging breach of contract and violations of his First Amendment rights arising after his resignation from his position with the Dental College of Georgia at Augusta University.  (Dkts. 18; 19.)  Defendants have moved to dismiss under Rule 12(b)(1) and 12(b)(6).  (Dkt. 10.)  The Court grants Defendants' motion.

## I.    Factual Background[1]

Defendant BOR hired Plaintiff as the Chairman of the Department of Oral Health and Diagnostic Sciences at the Dental College of Georgia. (Dkt. 7 ¶ 3.)  Defendant BOR and Plaintiff entered into a written contract of employment.   (*Id.* ¶ 4.)   The employment contract spelled out the various duties required of Plaintiff and the compensation Defendant BOR would pay him for fulfilling those duties.  (*Id.* ¶ 6.)

In 2013, Plaintiff served voluntarily on a hiring search committee to find a suitable dean for the dental school. (Dkt. 7 ¶ 7.)  The committee's deliberations were supposed to remain confidential.     (*Id.*   ¶ 8.) Nevertheless, Defendant Lefebvre learned that Plaintiff had opposed her appointment as dean.  (*Id.* ¶ 9.)  After taking her position as the Dean of the Dental School, Defendant Dean Lefebvre began to harass Plaintiff with nitpicking criticisms and reprimands.  (*Id.* ¶ 10.)   In November 2015, Dean Lefebvre sent a formal letter of reprimand to Plaintiff, accusing him of not being "a team player."  (*Id.* ¶ 11.)  The letter pointed

---

[1] Though Plaintiff attaches multiple exhibits to his amended complaint, the Court's review on a motion to dismiss is confined to the four corners of the complaint.  *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006).  As such, the Court considers only the well-pleaded factual allegations in Plaintiff's amended complaint.

out that Plaintiff had sent an email to other faculty stating that the failure of the school to meet on cancer treatment protocols indicated its failure to demonstrate a collaborative manner consistent with the school's goals.  (*Id.* ¶ 11.)  Defendant Lefebvre's letter took issue with this email and indicated that Plaintiff was suggesting "that the administration of the CDM [College of Dental Medicine] is not collaborative."  (*Id.* ¶ 12.)  Plaintiff alleges this was a distortion of the situation.  (*Id.*)  Based on these actions, however, Defendant Lefebvre disciplined Plaintiff with a warning letter.  (*Id.* ¶ 13.)

Plaintiff also served as the faculty advocate for a foreign national student who was the subject of academic remediation when she requested that he represent her.  (*Id.* ¶ 18.)  After the matter was settled, Defendant Lefebvre called Plaintiff to her office and questioned him about his defense of the student.  (*Id.*)

On August 18, 2016, Dean Lefebvre demoted Plaintiff due to violations of "expectations of behavior" and he was removed as department chairperson.  (*Id.* ¶¶ 14, 15, 19.)  Plaintiff alleges that his demotion was pretextual.  Plaintiff alleges that he was in fact demoted

for "championing the rights of a female foreign national that he believed was being discriminatorily treated because of her nationality." (*Id.* ¶ 16.)

Plaintiff's demotion resulted in substantial lost pay. (*Id.* ¶ 20.) He alleges Defendants BOR and Lefebvre are liable to him "for his lost pay in that he was wrongfully disciplined and denied contractual pay that was promised to him under his then existing contract with" Defendant BOR. (*Id.* ¶ 21.) In October 2016, Plaintiff resigned from his employment with Defendant BOR. (*Id.* ¶ 22.) Plaintiff claims he was wrongfully denied a final payout. (*Id.* ¶ 23.)

Plaintiff alleges that he is owed money based on the "Operational Plan" of the Dental Faculty Practice Group, which Plaintiff alleges is a "subordinate organization" of Defendant BOR. (*Id.* ¶¶ 26–28.) Defendants contend that the Dental Faculty Practice Group is an entirely separate 501(c)(3) non-profit organization unaffiliated with Defendant BOR. (Dkt. 13 at 1 n.1.) Plaintiff alleges that he contacted various individuals about the money he claims was owed to him but was given the runaround and never received a satisfactory answer. Plaintiff alleges that "Defendant acknowledged that there was a debt due, and further provided information that there was an amount of uncontroverted sums

due to Plaintiff of $43,911.54." (Dkt. 7 ¶ 31.) Defendant has refused to pay any amounts to Plaintiff, however. (*Id.* ¶ 32.)

As a result, Plaintiff filed suit against Defendants Dean Lefebvre and BOR, alleging claims for breach of contract and for violations of his First Amendment rights under 42 U.S.C. § 1983. (Dkt. 1.) Defendants moved to dismiss the complaint. (Dkt. 5.) Plaintiff then filed an amended complaint, which Defendants again moved to dismiss for failure to state a claim for relief under Rule 12(b)(6) and on the basis of multiple immunities under Rule 12(b)(1). (Dkts. 7; 10.)

## II.   Legal Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the motion to dismiss stage, a court accepts all well-pleaded facts accepted as true, and construes all reasonable inferences in the light most favorable to the plaintiff as the nonmovant. *Bryant v.*

*Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555.

## III.  Discussion

### A.   First Amendment Retaliation Claim under 42 U.S.C. § 1983 (Count I)

Plaintiff's amended complaint alleges three instances that he claims are protected First Amendment speech: (1) his participation in a hiring selection committee in which he expressed his opinion that Defendant Lefebvre would not a make a suitable Dean; (2) an email he sent to school faculty stating that the failure of faculty to meet on cancer treatment protocols indicated a failure to demonstrate a collaborative manner consistent with the school's stated goals; and (3) his representation of a student as a faculty advocate before the remediation committee regarding her academic performance.[2]  (Dkt. 7 ¶ 35.)  Plaintiff

---

[2] With regard to this third and final alleged activity, Plaintiff's amended complaint contains no facts to support his allegation or to clarify what protected "speech" or expression he in fact made.  Instead, he merely concludes that his "sole 'violation' of expectations [that caused his demotion] was championing the rights of a female foreign national that

alleges that Defendant Lefebvre intentionally retaliated against him for exercising his right to free speech about these matters.

"A government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment." *Alves v. Bd. of Regents*, 804 F.3d 1149, 1159 (11th Cir. 2015). Public employees, though subject to certain limitations on their freedoms by virtue of accepting public employment, do not "relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The goal, then, "is to strike a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Alves*, 804 F.3d at 1159 (citing *Pickering*, 391 U.S. at 568).

In determining whether the speech of a public employee is constitutionally protected, a court must decide "whether the employee spoke as a citizen on a matter of public concern" or as an employee of

---

he believed was being discriminatorily treated because of her nationality." (Dkt. 7 ¶ 16.) This conclusory assertion is insufficient to withstand a motion to dismiss.

matters of personal interest. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see also Alves*, 804 F.3d at 1159 (recognizing that these inquires "are questions of law for the court to resolve"). If an employee speaks as a citizen and on a matter of public concern, "then the possibility of a First Amendment claim arises." *Alves*, 804 F.3d at 1159 (quoting *Garcetti*, 547 U.S. at 418). Conversely, "if the employee spoke as an employee and on matters of personal interest, the First Amendment is not implicated, and the constitutional inquiry ends." *Id.* at 1160 (internal quotation marks omitted). Thus, for Plaintiff's claim to survive Defendants' motion to dismiss, his allegations must state a plausible claim that he has (1) spoken as a citizen and (2) on a matter of public concern. *Id.* The Court holds that Plaintiff has failed to allege either requirement.

### 1.   Speech as a Citizen or an Employee

First, the Court holds that Plaintiff's First Amendment claim must fail because Plaintiff's allegations show that he spoke not as a citizen but as an employee. Plaintiff focuses on the voluntary nature of his actions, which he claims remove his speech and activities from the realm of his employment and show he was acting as a citizen, independent of any of his job duties. (Dkt. 9 at 10.) But the allegations in his complaint fail to

show this.  For instance, Plaintiff alleges that his voluntary service on the selection committee was outside of the scope of his job description and that he only "consented as a good citizen interested in the welfare of his state's dental school."  (*Id.* at 11.)  Plaintiff's focus on the "voluntary" nature of each of the three activities that he outlines as protected First Amendment activity is misplaced.  Instead, "[t]he proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 424–25.

The fact that speech is not directly related to an official — or "non-voluntary" to use Plaintiff's characterization — job duty is thus not dispositive.  Rather, the inquiry is whether the speech "owes its existence to a public employee's professional responsibilities."  *Id.* at 421–22. Relevant factors in this inquiry include not only the employee's job description, but also whether the speech occurred at the workplace, and whether the speech related to the subject matter of the employee's job.

*Alves*, 804 F.3d at 1161.  Here, all factors weigh in favor of finding that Plaintiff was speaking as an employee for First Amendment purposes, not an ordinary citizen.  His speech occurred at the workplace and in his capacity as the department chairperson.  His activities concerned the subject matter of his job: dentistry, the instruction of dentistry and mentoring of dentistry students, and the management of the dental school.  And his expression owed its existence to his professional responsibilities as the department chairperson to manage the department and provide managerial support to the dental students and residency programs.  "When viewed together, these factors paint a clear picture of a person speaking as an employee and not as a private citizen." *King v. Bd. of Cty. Comm'rs*, 916 F.3d 1339, 1345 (11th Cir. 2019).

The Court finds that in considering all of the factors, and based on the allegations in Plaintiff's amended complaint, each of Plaintiff's alleged statements or activities were made pursuant to his official duties as an employee of the dental school.  *See Alves*, 804 F.3d at 1161. Plaintiff's First Amendment retaliation claim must therefore fail.

## 2.   Speech on a Matter of Public Concern

Plaintiff's § 1983 claim is likewise subject to dismissal for failure to state a claim under 12(b)(6) because he fails to allege that his speech was a matter of public concern.   Instead, his complaint contains only conclusory allegations and legal conclusions that his speech was "his private opinion about public concerns" and that the discipline was an attempt by Defendant Lefebvre to "chill public speech . . . about matters of public concern."  (Dkt. 7 ¶¶ 11, 13.)  He also rotely asserts that his demotion was "in retaliation for speaking out on other issues identified herein" and labels his allegations as "matters of public/academic concern."  (*Id.* ¶¶ 14, 19.)  But simply labeling a matter as one of "public concern" does not make it so.  *Alves*, 804 F.3d 1166 n.6 (recognizing that "it is the province of the court to determine whether" speech was on a matter of public concern, notwithstanding the plaintiffs' characterization as such).  And the Court is not bound to accept his legal conclusions.  *See Twombly*, 550 U.S. at 555 (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

This is particularly true in the case of public employment, which could always be characterized as a "public concern" if defined too broadly. *See Connick v. Myers*, 461 U.S. 138, 149 (1983) (rejecting the arguing that issues relating to public education systems are intrinsically matters of public concern). "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark — and certainly every criticism directed at a public official — would plant the seed of a constitutional case." *Ferrara v. Mills*, 781 F.2d 1508, 1515–16 (11th Cir. 1986) (quoting *Connick*, 461 U.S. at 149). Because "virtually all speech which is made in and about a public employment setting will have some public significance," the focus must be not only on the content of the speech, but also the form and context to determine whether it is constitutionally protected. *Id.* at 1515.

And here in considering the content, context, and form of the speech, Plaintiff alleges no facts — beyond conclusory allegations and legal conclusions — that his speech was on a matter of public concern or anything besides his own private, personal matters and grievances with his supervisor and fellow faculty. For instance, Plaintiff alleges that he was opposed to the hiring of Defendant Lefebvre as his supervisor

because he did not believe she would adequately consider opposing viewpoints. (Dkt. 7 ¶ 9.) This does not make his opposition to her hiring "a matter of public concern." "[S]peech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." *Alves*, 804 F.3d at 1166 (quoting *Maples v. Martin*, 858 F.2d 1546, 1552 (11th Cir. 1988)).

Similarly, Plaintiff's email to other faculty concerning a meeting and his attempt to "cajole" them into collaborating is a matter of personal interest, not a matter of social, political, or other civic concern. (*See* Dkt. 9 at 11.) With regard to his "championing" of the rights of a female foreign national who he believed was being discriminated against, Plaintiff's complaint contains no factual support detailing any actions he took or speech he made in which he expressed this opinion, only that he met with Defendant Lefebvre about his representation of the student. Because it is unclear what actual "speech" Plaintiff alleges occurs on this instance, the Court finds that his allegations on this point cannot state a claim that his speech was on a matter of public concern.

Further, in his brief, Plaintiff frames his concerns generally as "public concerns that [he] had over the general welfare of the students

and faculty" at the dental school. (Dkt. 9 at 12.) But "the relevant inquiry is not whether the public would be *interested* in the topic of the speech at issue, [but] whether the *purpose* of [the plaintiff's] speech was to raise issues of public concern." *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000) (emphasis added). "[W]hile ostensibly intertwined with" the general welfare of the students and faculty, Plaintiff's speech "was not intended to address a matter of public concern from the perspective of a citizen." *See Alves*, 804 F.3d at 1167. Instead, Plaintiff's speech content was chiefly personal concerns undertaken in his role as an employee and a manager of the dental school. *See id.* at 1166 (holding memorandum focusing on plaintiffs' disapproval with their supervisor did not constitute speech on a matter of public concern). While not dispositive, Plaintiff also never publicly disseminated or publicized any of his concerns about the "general welfare" of the school. "In combination with other aspects of [his] speech, [the in-house nature of the speech] reinforces that [Plaintiff] was an employee discussing employment-related matters, not a private citizen engaging in protected speech." *King*, 916 F.3d at 1349.

Plaintiff relies heavily on *Lane v. Franks*, 573 U.S. 228 (2014), as support for his § 1983 claim, claiming that it "has decisively settled the

14

question of protected speech in this case." (Dkt. 9 at 10.) It has not. That case is clearly distinguishable from these facts. In *Lane*, the plaintiff, a former director at a community college, alleged that he was retaliatorily terminated for testifying in a criminal corruption trial against a former employee and state legislator. 573 U.S. at 234. But as the Supreme Court acknowledged, "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth." *Id*. at 238. This independent obligation to speak the truth "renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee." *Id*. at 239.

Plaintiff's speech here was neither sworn testimony in a judicial proceeding nor compelled by subpoena. Instead, his work-related speech was made during hiring committee meetings, remediation committee meetings, and through email and a letter to his colleagues. His speech concerned the hiring of his future supervisor, his colleague's participation (or lack thereof) in a meeting he deemed worthwhile, and the academic remediation of a student. All of these matters arose as a result of Plaintiff's job responsibilities, rendering his speech that of an employee,

not a public citizen.  *See id.* at 238–39.  Plaintiff's allegations of protected speech here are wholly dissimilar from the speech at issue in *Lane*.  The Court holds that Plaintiff has failed to allege that his speech was made as a citizen and on a matter of public concern.  Plaintiff's § 1983 claim for First Amendment retaliation thus must fail.  The Court grants Defendants' motion to dismiss this claim.

Because the Court agrees with Defendants and finds that Plaintiff has failed to state a claim for relief under 12(b)(6), the Court declines to address the remainder of the sovereign, Eleventh Amendment, and qualified immunity arguments raised in Defendants' brief.

## B.    Breach of Contract Claim (Count II)

Having dismissed the only federal claim to give this Court subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim for breach of contract.  *See Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108–09 (11th Cir. 2006) (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)) (recognizing that federal courts are "strongly encourage[d] or even require[d]" to dismiss state-law claims "if the federal claims are dismissed prior to trial"); *Baggett v. First Nat'l Bank*

16

*of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) (opining that "[s]tate courts, not federal courts, should be the final arbiters of state law"). Indeed, the Eleventh Circuit has held that, when a court dismisses all federal claims and only state-law claims remain, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Eubanks v. Gerwen*, 40 F.3d 1157, 1161–62 (11th Cir. 1994). The Court thus dismisses without prejudice Count II of Plaintiff's amended complaint.

## IV.   Conclusion

The Court **GRANTS** Defendants' Motion to Dismiss (Dkt. 10) and **DISMISSES** Count I of Plaintiff's amended complaint for failure to state a claim.

The Court **DECLINES** the exercise of supplemental jurisdiction over Plaintiff's remaining state-law breach of contract claim and **DISMISSES** Count II of Plaintiff's amended complaint **WITHOUT PREJUDICE**.

**SO ORDERED** this 21st day of November, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE